IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHELLY PARKER, et al., | ) | Case No. 03-CV-0213-EGS |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF** |
| | ) | **POINTS AND AUTHORITIES** |
| v. | ) | **IN REPLY TO DEFENDANTS'** |
| | ) | **STANDING ARGUMENTS** |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY
TO DEFENDANTS' STANDING ARGUMENTS**

**COME NOW** the Plaintiffs, Shelly Parker, Dick Anthony Heller, Tom G. Palmer, Gillian St. Lawrence, Tracey Ambeau, and George Lyon, by and through undersigned counsel, and pursuant to the Court's order of October 30, 2003, submit their Memorandum of Points and Authorities In Reply to Defendants' Standing Arguments.

Dated: November 7, 2003

                                                Respectfully Submitted,

                                                Alan Gura (D.C. Bar No. 453449)
                                                Gura & Day, LLC
                                                Robert A. Levy (D.C. Bar No. 447137)
                                                Gene Healy (D.C. Bar No. 468839)
                                                Clark M. Neily, III (D.C. Bar No. 475926)
                                                1717 K Street, N.W., Suite 600
                                                Washington, D.C. 20036
                                                Phone: 202.550.8777
                                                Fax:   202.318.4512

                        By: _____
                                                Alan Gura

                                                Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES RE: STANDING

## PRELIMINARY STATEMENT

Defendants significantly misrepresent – despite having previously been corrected – the basic facts of this case, but this time add serious misrepresentation of the law regarding standing. As pointed out by the plaintiffs' earlier filing, courts have repeatedly found standing to challenge the type of laws contested in this action, Fraternal Order of Police v. United States, 323 U.S. App. D.C. 49, 152 F.3d 998 (D.C. Cir. 1998); Navegar, Inc. v. United States, 332 U.S. App. D.C. 288, 103 F.3d 994 (D.C. Cir. 1997); Gillespie v. City of Indianapolis, 185 F.3d 693, 710-711 (7th Cir. 1999); People's Rights Organization v. City of Columbus, 152 F.3d 522 (6th Cir. 1998); Coalition of New Jersey Sportsmen v. Whitman, 44 F. Supp. 2d 666, 673 n.10 (D.N.J. 1999), aff'd, 263 F.3d 157 (3d Cir. 2001); Bach v. Pataki, 2003 U.S. Dist. LEXIS 16793, at *14-*15 (N.D.N.Y. Sept. 23, 2003); cf. Hickman v. Block, 81 F.3d 98 (9th Cir. 1996) – but *never* has any federal court refused to reach the substantive merits of a gun law challenge.

To begin, there are six, not four plaintiffs. Def. Brief, p. 1. This error has been discussed before. See Reply to Opp. to Motion for Summary Judgment, p. 9. A simple reading of the complaint would also reveal that plaintiffs are not challenging the District's ban on the carrying of concealed weapons generally, only to the extent that ban has been recently enlarged to encompass the carrying of a pistol within one's home. The difference is significant for standing purposes, and has thus also been discussed at length, several times, by the plaintiffs. See Motion for Summary Judgment, p. 5; Opposition to Consolidation, pp. 8-9.

It is also misleading to suggest that if plaintiffs were to prevail, "the government [would] be enjoined from enforcing its current gun laws in the District of Columbia." Def. Brief, p. 2. Of the District's numerous gun laws, plaintiffs contest only those that are most shockingly

unconstitutional. The notion that plaintiffs seek a wholesale injunction against the regulation of firearms in the District of Columbia is a gross distortion of plaintiffs' position.

## ARGUMENT

### I. THE LIKELIHOOD OF BEING CAUGHT HAS NEVER BEEN A FACTOR IN DETERMINING STANDING.

Defendants suggest – falsely – that plaintiffs are unlikely to be caught, and thus cannot complain of being the subjects of a severe criminal statute. The horrific crime statistics submitted by defendants belie this argument. Every day, people in the District of Columbia are murdered, maimed, raped, and otherwise subjected to violent crime, often within their homes. Shelly Parker has already been targeted by drug dealers *at her home*. Dick Heller lives amongst open air drug markets. None of this is disputed by defendants. It is not at all far-fetched to imagine the police *returning*, again, to the scene of a violent crime at Shelly Parker's home. If, on such a visit, the police were to discover Parker defended herself with a gun, she would be subject to prosecution by the Office of Corporation Counsel for possessing an unregistered handgun and possession of a functional firearm, even if her use of force were legal.

Never has any federal court declined to find standing to challenge a zealously enforced law because the likelihood of *getting caught* was deemed low. Certainly defendants cite no precedent for such a ridiculous proposition. If defendants enforced a ban on reading books at home, would plaintiffs lack standing to challenge such a law on First Amendment grounds because the likelihood of MPD catching them is low? But there is no question that these laws are actively enforced. That much has never been contested by defendants' pleadings or oral argument, and it has been recognized by the Court. T., p. 6, l. 20-21; p. 8, l. 19-25.

Even defendants' standing brief confesses that "prosecution of gun offences [sic] in this jurisdiction routinely occurs. . ." Brief, p. 4. And yes, the laws forbid citizens from using firearms at home in self-defense. Statement of Undisputed Material Facts, Nos. 29, 34. (uncontested). Even if defendants were correct, and self-defensive uses of firearms somehow immunize people from being prosecuted for firearms offenses, the Second Amendment protects "the right of the people to *keep* and bear arms," not merely the right to get away with temporarily having had an otherwise unlawful gun if the gun was used in self-defense.

Plaintiffs are puzzled by defendants' continuing reliance on Navegar, where the D.C. Circuit *upheld* standing to make constitutional challenges, in a civil setting, to gun prohibitions. The case contains much strong language conclusively establishing plaintiffs' standing. Only Navegar's vagueness claim failed for lack of standing, as there was no history of prosecution to delineate the contours of the allegedly vague provisions. Likewise, lack of standing was premised entirely on vagueness in Lion Mfg. Corp. v. Kennedy, 117 U.S. App. D.C. 367, 330 F.2d 833 (D.C. Cir. 1964). The Lion plaintiffs challenged a ban on the transportation of gambling machines on grounds of vagueness, but were themselves vague as to the nature of machines with which they were concerned, and the subsequent critical relationship between such machines and the laws of the various fifty states. The threat of prosecution was thus unclear.

Unavailing, too, is defendants' reliance on Doe v. Duling, 782 F.2d 1202 (4th Cir. 1986), which concerned a challenge to Virginia's ancient bans on fornication and cohabitation. The last recorded convictions for fornication and cohabitation occurred in 1849 and 1883, respectively. The statutes being "a matter of historical curiosity," plaintiffs' fears of prosecution were "speculative and imaginary." Doe, 782 F.2d at 1206. Do defendants *seriously* suggest that the

challenged statutes are similar matters of "historical curiosity," gathering dust against pervasive and open defiance, never enforced against anyone?  Or are plaintiffs – and the Court, T., p. 6, l. 20-21; p. 8, l. 19-25 –  merely imagining the zealous and active enforcement of the challenged laws?  Is there anything vague about the word "handgun" or "pistol?"  Is there anything vague about rendering firearms operational, or moving them within the home?

Most curious, however, is the defendants' suggestion that a necessity or justification defense would be available to sanction plaintiffs' illegal possession of handguns or functional firearms in the event of crime.  Wilson v. United States, 91 U.S. App. D.C. 135, 198 F.2d 299 (D.C. Cir. 1952).  How ironic: the plaintiffs would surely go to jail for having these weapons, but would be set free if the weapons proved necessary for self-defense.

Yet Wilson does not stand for such a proposition.  In the Wilson era, when the city's streets were far more peaceful, it was lawful for the defendant to have a loaded gun in his car.  Wilson retrieved such a gun to (successfully) fend off a violent gang but was convicted of carrying a concealed weapon.  The question *on remand* for the jury was "whether, in having a loaded pistol under the driver's seat of his automobile, [the defendant] had the weapon 'on or about his person' in violation of the [carry] statute."  Wilson, 198 F.2d at 300 (footnote omitted).  The record does not disclose if poor Mr. Wilson was convicted at his second trial.

The suggestion that Wilson immunizes plaintiffs' violation of the law in the event of necessity is false.  Under identical circumstances, plaintiffs would be easily convicted of possessing a handgun.  Nor would such immunity do anything to alleviate the risk of prosecution and conviction for engaging in constitutionally protected conduct – the precise reason why Congress enacted, and federal courts implement, the Declaratory Judgment Act.

## II.  COMPLETE RELIEF IS AVAILABLE TO PLAINTIFFS.

Plaintiffs challenge only misdemeanors, not felonies.  In the District of Columbia, misdemeanors are prosecuted in the name of the District of Columbia by Corporation Counsel – *not* by the United States.  D.C. Code § 23-101(a).   Carrying a Pistol Without A License is most definitely prosecuted by the Office of Corporation Counsel when that carrying *is inside the home*, a misdemeanor, rather than in public, in which case it would be a felony prosecuted by the U.S. Attorney.  As plaintiffs have explained before, the law has not always made this distinction, but it clearly does today.  Compare former D.C. Code § 22-3204 with current D.C. Code §§ 22-4504, 4515.  See Motion for Summary Judgment, p. 5.  To the extent that the U.S. Attorney might theoretically prosecute the other misdemeanors challenged here, which are routinely and zealously enforced by defendants, the declaratory relief sought by plaintiffs would very much foreclose such prosecutions.

## CONCLUSION

Defendants' standing arguments are without merit.  It is common knowledge, recognized by the Court and uncontested by defendants, that these laws are zealously enforced.  These laws plainly deter conduct that is arguably protected by explicit constitutional provision.  The Court is empowered to secure the rights of the citizenry under such circumstances.

Dated:  November 7, 2003                    Respectfully Submitted,

Alan Gura (D.C. Bar No. 453449)             Robert A. Levy (D.C. Bar No. 447137)
Gura & Day, LLC                             Gene Healy (D.C. Bar No. 468839)
1717 K Street, N.W., Suite 600              Clark M. Neily, III (D.C. Bar No. 475926)
Washington, D.C. 20036
Phone: 202.550.8777, Fax: 202.318.4512
By: _____
Alan Gura                                   Attorneys for Plaintiffs

5