**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
SHELLY PARKER, et al.,          )
                                )
                Plaintiffs,     )
                                )
        v.                      )      Civil Action No. 03-0213 (EGS)
                                )
DISTRICT OF COLUMBIA, et al.,   )
                                )
                Defendants.     )
_____)
```

**MEMORANDUM OPINION**

**I. Introduction**

Plaintiffs in this case are six residents of the District of Columbia who wish to possess a handgun or an assembled long gun in their homes for self-defense but do not do so because they "fear arrest, criminal prosecution, and fine." Compl. at ¶ 1, 3, 5, and 6. Plaintiff Heller has applied for a permit to possess a handgun in his home and has been rejected. Compl. at ¶ 2. The other five plaintiffs have not applied for a permit. None of the plaintiffs have asserted membership in the District of Columbia Militia.

Plaintiffs argue that D.C. Code § 7-2502.02(a)(4)[1], barring registration of handguns, D.C. Code § 7-2507.02[2], barring the

_____

[1] "A registration certificate shall not be issued for a . . . (4) Pistol not validly registered to the current registrant in the District prior to September 24, 1976." "Pistol means any firearm originally designed to be fired by use of a single hand." D.C. Code § 7-2501.01(12) (2003).

[2] "Except for law enforcement personnel described in § 7-2502.01(b)(1), each registrant shall keep any firearm in his

1

possession of firearms within the home or possessed land, and D.C. Code §§ 22-4504[3] and 4515, forbidding the carrying of firearms within one's home or possessed land without a license, ("D.C. gun control laws") should be permanently enjoined because these laws violate the Second Amendment, which establishes a fundamental individual right to bear arms.  Plaintiffs are asking this Court to grant Summary Judgment in their favor.

Defendants in this case are the District of Columbia and Anthony Williams, Mayor of the District of Columbia.  Defendants argue that the Second Amendment does not provide an individual right to bear arms.  Defendants ask the Court to grant their Motion to Dismiss.

## II. Legal Standard

When considering a Motion to Dismiss, the Court construes the facts in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff.  *See Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002).  A Motion to Dismiss is granted and the complaint dismissed only if no relief could be granted on those facts.  *See Sparrow v. United Air Lines*

─────────────

possession unloaded and disassembled or bound by a trigger lock or similar device unless such firearm is kept at his place of business, or while being used for lawful recreational purposes within the District of Columbia."

[3] "(a) No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law . . . . Whoever violated this section shall be punished as provided in § 22-4515 . . . ."

*Inc.,* 216 F.3d 1111, 1114 (D.C. Cir. 2002).

In reviewing a Motion for Summary Judgment, the Court must first determine if there are genuine issues of material fact. *Shields v. Eli Lilly & Co.*, 895 F.2d 1463, 1465 (D.C. Cir. 1990) (citing Fed. R. Civ. P. 56(c)).  Summary judgment should be granted only if the moving party has shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. Legal Analysis

#### A. Supreme Court Analysis of the Second Amendment Right

Plaintiffs move for summary judgment in this case on the grounds that the D.C. gun control laws are unconstitutional because they violate the Second Amendment to the U.S. Constitution.  Defendants have filed a Motion to Dismiss Plaintiffs' Complaint because plaintiffs have not made any showing that their possession or use of a firearm has some reasonable relationship to the preservation or efficiency of a well-regulated Militia.

The Second Amendment provides:

> A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed.

U.S. Const. amend. II.  The U.S. Supreme Court has not considered a direct Second Amendment challenge since its 1939 decision in *United States v. Miller*, 307 U.S. 174 (1939).  In *Miller*, the district

court granted the defendant's Motion to Dismiss his indictment under the National Firearms Act for unlawfully transporting in interstate commerce an unregistered double barrel 12-gauge shotgun with a barrel of less than 18 inches, on the grounds that the Act was "in contravention of the Second Amendment to the Constitution." *United States v. Miller*, 26 F. Supp. 1002, 1003 (1939).

The U.S. Supreme Court, on appeal of the dismissal, held that

> In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense.

*Id*. at 178.

The Court noted that, as originally adopted, the U.S. Constitution reserved to the states "the Authority of training the Militia according to the discipline prescribed by Congress." *Id*. (citing U.S. Const. art. 1 § 8).  Accordingly, the Court reasoned that it was "[w]ith obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view." *Id*. at 178.

The Court went on to explain the nature and purpose of the Militia in the time when the Second Amendment was enacted.  "The sentiment of the time strongly disfavored standing armies; the common view was that adequate defense of country and laws could be

secured through the Militia – civilians primarily, soldiers on occasion." *Id.* at 179.   When the Militia was called into service, these men were expected to appear bearing arms, which they supplied themselves.  *Id.*

Although the Supreme Court decided Miller sixty-five years ago, there has recently been some debate concerning whether *Miller* should be construed as interpreting the Second Amendment to guarantee either: (1) a collective right of the states to arm the Militia; or (2) a limited individual right to bear arms but only as a member of a state Militia; or (3) an individual right to bear arms for non-Militia use.

This Court reads *Miller*, in concert with the vast majority of circuit courts, as rejecting an individual right to bear arms separate and apart from Militia use.  *See id*. at 179 – 182;  *United States v. Emerson*, 270 F.3d 203, 218-19 (5th Cir. 2001).  In doing so, this Court incorporates by reference section III (2)(A) Early Judicial History of the Second Amendment and III (2)(B) Modern Second Amendment Jurisprudence of Judge Reggie Walton's opinion in *Seegars v. Ashcroft*, 297 F. Supp. 2d 201 (D.D.C. 2004)(Amended January 29, 2004).

The Supreme Court has twice been presented with the opportunity to re-examine *Miller* and has twice refused to upset its holding*.*  In *Lewis v. United States*, the Court concluded that a statute that criminalizes possession of a firearm by a convicted felon "[did not] trench on any constitutionally protected

5

liberties."  445 U.S. 55, 65 n.8 (1980)(citing *Miller* and three
lower court cases rejecting Second Amendment challenges.)  Further,
the Court dismissed an appeal in which a state court held that the
Second Amendment did not confer a right to bear arms unrelated to
Militia service for "want of a substantial federal question."
*Burton v. Sills*, 394 U.S. 812 (1969).  Had the Court thought that
the Second Amendment created an individual right that was
infringed, the Court could not have reached these conclusions.

Plaintiffs suggest that *Miller* may simply have proposed a test
to separate weapons "covered" by the Second Amendment from weapons
"not covered" by the Second Amendment.  *Cf. Fraternal Order of
Police v. United States*, 173 F.3d 898, 906. (D.C. Cir.
1999)(raising the question of the potential meaning of the *Miller*
test).

While plaintiffs' arguments are not without merit, if the
Supreme Court truly thought that *Miller* was being read to stand for
a proposition much greater than the Court intended, it surely would
have taken one of the opportunities it has had in the last sixty-
five years to grant *certiorari* and correct the misunderstanding.
This Court is thus reluctant to accept plaintiffs' reading of
*Miller*.


**B. Circuit Courts Analysis of the Second Amendment Right**

Plaintiffs rely primarily on the Fifth Circuit's decision in
*United States v. Emerson* to support their contention that the

Second Amendment establishes a fundamental individual right to bear arms, regardless of membership or service in an organized Militia. 270 F.3d 203 (5th Cir. 2001).  In *Emerson*, the Fifth Circuit held that the ban on carrying a pistol while subject to a restraining order was reasonable.  *Id.* at 260.  The two judge majority went on to conclude that the Second Amendment guarantees an individual's right to keep and bear arms for self-defense, defense of property, game hunting, and to enable him to be called on as needed by a state to resist oppression and tyranny by the federal government and the federal standing armies, so long as the weapons are not of a type that have no conceivable application in the context of a state Militia.  *United States v. Emerson*, 270 F.3d 203, 260 (citing *United States v. Miller*, 307 U.S. 174 (1939)).  In so doing, the two judge majority recognized that it stood alone among all the Circuits in recognizing an individual right to bear arms under the Second Amendment and conceded that *Miller* did not go so far as to adopt this view.  *Id.* at 218-20, 227 (and cases cited therein). The third judge, who concurred in the result, criticized the majority's Second Amendment opinion as irrelevant dicta because the existence of an individual's right to bear arms was unnecessary to the court's decision.  *Id.* at 272-74.

Interestingly, in finding an individual right to bear arms, the two judge majority ignored prior Fifth Circuit decisions. Almost thirty years earlier, the Fifth Circuit was twice presented with criminal defendants who claimed that their fundamental

individual right to bear arms under the Second Amendment was violated.  In both cases, the Fifth Circuit upheld the defendants' convictions for unregistered saw-off shotguns.  Applying *Miller,* the Circuit held that the defendants' possession of shotguns had no relationship to the "preservation or efficiency of a well-regulated Militia" and that the Second Amendment did not guarantee the defendants' right to possess firearms.  *United States v. Williams*, 446 F.2d 486, 487 (5th Cir. 1971); *United States v. Johnson*, 441 F.2d 1134, 1136 (5th Cir. 1971)).

This change in position by the Fifth Circuit is troubling in light of the Fifth Circuit's rule that a subsequent panel is precluded from disregarding the holding of an earlier panel unless it is changed by an *en banc* decision or by a decision of the United States Supreme Court.  *See United States v. McFarland*, 264 F.3d 557, 559 (5th Cir. 2001); *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 425-26 (5th Cir. 1987).

The two judge majority attempted to reconcile the appearance of a change of position by dropping a footnote in *Emerson* in which it distinguishes these former cases as being cases that "do no more than apply *Miller* to virtually identical facts." *Emerson*, 270 F.3d at 227 n. 21.  In doing so, the two judge majority brushed these cases aside without any real attempt to distinguish them.  Thus, this Court does not place a great deal of reliance on the stability of *Emerson* even within the Fifth Circuit.

Since *Emerson* was decided, the Fifth Circuit appears to remain

8

the only Circuit to adopt either its narrow construction of *Miller* as non-dispositive of the nature of the right guaranteed by the Second Amendment, or its finding that the Second Amendment guarantees an individual and fundamental right to bear arms.  *See Thomas v. City Council of Portland*, 730 F.2d 41, 42 (1st Cir. 1984) ("Established case law makes clear that the federal Constitution grants appellant no right to carry a concealed handgun."); *United States v. Toner,* 728 F.2d 115, 128 (2d Cir. 1984) (noting gun possession is not a fundamental right); *United States v. Graves,* 554 F.2d 65, 66 n.2 (3d Cir. 1977) (dicta) (*Miller* is controlling on the individual rights question); *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) (The Second Amendment "does not confer an absolute individual right to bear any type of firearm."); *United States v. Napier*, 233 F.3d 394, 403 (6th Cir. 2000) (finding no reason to depart from its established precedent that the Second Amendment does not guarantee an individual right to bear arms); *Stevens v. Unites States*, 440 F.2d 144, 149 (6th Cir. 1971) (Because the Second Amendment right applies only to state Militias, "there can be no serious claim to any express constitutional right of an individual to posses a firearm."); *Gillespie v. City of Indianapolis*, 185 F.3d 693 (7th Cir. 1999) (The Second Amendment "establishes no right to possess a firearm apart from the role possession of a gun might play in maintaining a state Militia."); *United States v. Nelsen*, 859 F.2d 1318, 1320 (8th Cir. 1988) (recognizing no plausible claim that challenged statute "would

impair any state Militia"); *United States v. Hinostroza*, 297 F.3d
924, 927 (9th Cir. 2002); *United States v. Graham*, 305 F.3d 1094,
1106-07 (10th Cir. 2002); *United States v. Bayles*, 310 F.3d 1302,
1307 (10th Cir. 2002); *United States v. Wright*, 117 F.3d 1265, 1273
(11th Cir. 1997) (The Second Amendment is limited to the
"possession or use of weapons that is reasonably related to Militia
actively maintained and trained by the states.").

In response to the numerous Circuit Court opinions, plaintiffs
argue that although the Supreme Court used the correct
interpretation of the term "Militia" when deciding *Miller*, the
definition of "Militia" used by most present courts is too narrow.
Rather than a small group of people organized by the state to take
arms against a tyrannical federal government, plaintiffs claim that
the "Militia" referred to in *Miller* was intended and understood at
the time to include all private individuals who would be capable of
acting for the common defense (i.e. all able-bodied men).  Pls.'
Opp'n to Defs. Mot. to Dismiss at 8 (*citing Miller*, 307 U.S. at
178-9.).

The Eleventh Circuit considered plaintiffs' broad definition
of Militia, but concluded that *Miller* "strongly suggests that only
Militias actively maintained and trained by the states can satisfy
the 'well regulated Militia' requirement of the Second Amendment."
*United States v. Wright*, 117 F.3d 1265, 1272 (11th Cir. 1997).

In response to the Eleventh Circuit's holding, plaintiffs
argue that the Framers were largely suspect of any organized

10

Militia and could not have intended for only state-trained Militia
to have the right to bear arms.  Pls.' Opp'n to Defs. Mot. to
Dismiss at 19.  Plaintiffs further argue that the Second Amendment
could not be construed as a right of the states to arm a Militia
because that would be in conflict with Art. 1 § 8, Cl. 16 (Congress
has the power "to provide for . . . arming . . . the Militia.").
Pls.' Mot. for Summ. J. at 32.

This Court is not persuaded that a "well-regulated Militia"
means each able-bodied person separate and apart from his or her
enrollment or association with a Militia.  As the Eleventh Circuit
and the plain meaning of the Second Amendment make clear, a Militia
must not be a free-for-all.  Rather, a Militia must be "well-
regulated" fighting force, implying, at the very least, some
semblance of organization at the state or local level.  See *Wright
v. United States*, 302 U.S. at 583, 588 (1938) ("[E]very word must
have its due force, and appropriate meaning; for it is evident from
the whole instrument, that no word was unnecessarily used, or
needlessly added.  The many discussions which have taken place upon
the construction of the constitution, have proved the correctness
of this proposition; and shown the high talent, the caution, and
the foresight of the illustrious men who framed it.  Every word
appears to have been weighed with the utmost deliberation, and its
force and effect to have been fully understood.")

## C. District of Columbia Circuit Court Guidance

The District of Columbia Circuit Court's opinions to date

11

provide some guidance regarding its position with respect to the nature of the right guaranteed by the Second Amendment.  On rehearing of *Fraternal Order of Police v. United States*, the Circuit upheld a statute that prohibits possession of a firearm by persons convicted of a domestic violence misdemeanor against a Second Amendment challenge by the Fraternal Order of Police. *Fraternal Order of Police v. United States*, 173 F.3d 898, 906 (D.C. Cir. 1999) [*hereinafter* "FOP II"].  In so doing, the Circuit assumed without deciding, based on the parties' failure to object, that the *Miller* test was applicable on the facts before it.  *Id.* It went on to express some confusion as to the meaning of the test set forth in *Miller*.  The D.C. Circuit then proceeded to avoid altogether the questions of the nature of the right guaranteed by the Second Amendment on the grounds that the FOP argued, without submitting any evidence on the issue, that in "most states," police officers can be called into service in Militias.  *Id.; see also Fraternal Order of Police v. United States*, 152 F.3d 998, 1002 (D.C. Cir. 1998) [*hereinafter* "FOP I"].  The D.C. Circuit saw no need to proceed with an in-depth analysis of the Second Amendment challenge in light of the lack of evidence presented regarding the relationship of these police officers with any Militia.  *FOP II*, 173 F.3d at 906.  While inconclusive, the D.C. Circuit's comments in *FOP II* suggest to this Court that, if presented with the issue, the D.C. Circuit is likely to reject the notion that the Second Amendment guarantees an individual's right to bear arms absent a

substantial nexus between the person and the states' ability to maintain a Militia. *Id*. ("FOP never indicates how restrictions . . . would have a material impact on the Militia.").

Plaintiffs argue that implicit in *FOP II* is the idea that if a significant portion of "ordinary citizens" are prohibited from owning handguns, as they are under the D.C. gun control laws, then that in itself would have a material impact on the Militia. Pls.' Opp'n. to Defs. Mot. to Dismiss at 12.

This Court, like the D.C. Circuit Court, sees no need to proceed with an in-depth analysis because none of these plaintiffs have asserted membership or any relationship with any Militia.

In the only other case in this Circuit in which a challenge to a statute was made on Second Amendment grounds, the Circuit dismissed the claim based on defendant's failure to make the argument in the district court. *See United States v. Drew*, 200 F.3d 871, 876 (D.C. Cir. 2000).[4]

---

[4]On January 14, 2004, Judge Walton of this Court issued an opinion in *Seegar v. Ashcroft* that rejected a challenge by five District of Columbia citizens to the D.C. gun control laws on Second Amendment grounds. 297 F. Supp. 2d 201 (D.D.C. 2004) (Amended January 29, 2004).

On October 1, 2003 defendant submitted a Supplemental Memorandum to the Court calling the Court's attention to the recent decision of Judge Roberts of this Court in *United States v. Cole*, 2003 U.S. Dist LEXIS 14029, filed August 15, 2003. In denying a Motion to Dismiss by a criminal defendant charged with possession of a firearm by a convicted felon, Judge Roberts concluded that "...with the exception of the Fifth Circuit, the courts of appeals have consistently held that individuals have no fundamental constitutional right to possess a firearm." Slip Opinion at 12.

**D.   District of Columbia Court of Appeals Holdings**

The D.C. Court of Appeals has had occasion to rule on a Second Amendment issue in a case in which the District of Columbia's Carrying a Pistol Without a License statute was challenged.  While plaintiffs are correct in their assertion that the holding of the District of Columbia Court of Appeals is not binding on this Court, this Court nonetheless finds the opinions of that court persuasive. On this issue, the District of Columbia Court of Appeals sided squarely with those Circuits that rejected the Fifth Circuit's narrow construction of *Miller*, and held that "the Second Amendment guarantees a collective rather than an individual right." *Sandidge v. United States*, 520 A.2d 1057, 1058 (D.C. 1987).  The D.C. Court of Appeals held that the Second Amendment only

> protects a state's right to raise and regulate a Militia by prohibiting Congress from enacting legislation that will interfere with that right . . .  In sum, 'the right to keep and bear arms is not a right conferred upon the people by the federal constitution.'

*Id*. (citing *United States v. Warin*, 530 F.2d 103, 106 (6th Cir. 1976); *Cases v. United States*, 131 F.2d 916, 921 (1st Cir. 1942)).

The D.C. Court of Appeals was again confronted with a challenge to the Second Amendment in *Barron v. United States*, 818 A.2d 987 (D.C. 2003).  In *Barron*, a criminal defendant appealed his conviction on several grounds including the notion that the District of Columbia's statutes prohibiting the carrying of pistol without a license - D.C. Code § 22-4504 and D.C. Code § 7-2502, two of the four statutes at issue in this case - violate the Second

14

Amendment.  *Id.*  While the D.C. Court of Appeals overturned the conviction on other grounds, the court summarily addressed and dismissed the Second Amendment challenge noting, "in *Sandidge* . . . this court found that the Second Amendment protects the rights of the state to bear arms, not the right of the individual. Therefore, our carrying a pistol without a license statute does not violate the Second Amendment."  *Id.* at 994.

### IV. Conclusion

Because this Court rejects the notion that there is an individual right to bear arms separate and apart from service in the Militia and because none of the plaintiffs have asserted membership in the Militia, plaintiffs have no viable claim under the Second Amendment of the United States Constitution.  Thus, plaintiffs' complaint must be dismissed and their Motion for Summary Judgment denied as moot.

While plaintiffs extol many thought-provoking and historically interesting arguments for finding an individual right, this Court would be in error to overlook sixty-five years of unchanged Supreme Court precedent and the deluge of circuit case law rejecting an individual right to bear arms not in conjunction with service in the Militia.

An appropriate Order accompanies this Memorandum Opinion.