IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DICK ANTHONY HELLER, et al., | ) | Case No. 03-CV-0213-EGS |
| | ) | |
| Plaintiffs, | ) | **OPPOSITION TO DEFENDANTS'** |
| | ) | **NOTICE OF INTENT TO RELY ON** |
| v. | ) | **ADDITIONAL AUTHORITY AND** |
| | ) | **ARGUMENTS** |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPPOSITION TO DEFENDANTS' NOTICE OF INTENT TO RELY ON
ADDITIONAL AUTHORITY AND ARGUMENTS**

1.      Defendants' latest notice underscores a point that Plaintiff has emphasized throughout this litigation:  It seems there is no argument so baseless, pettifogging, or ill-conceived  that the Defendants will not deploy it in their attempt to deny Plaintiff's counsel a reasonable fee award in this case.

Litigation is expensive. When Defendants file extensive supplemental briefs after losing a ground-breaking constitutional case, then launch frivolous attacks on the professional status of opposing counsel as they have done in their latest filing, the District's residents will ultimately bear the added costs that such an unreasonable, scorched-earth approach to litigation imposes. The claims in Defendants' latest filing demonstrate, once again, the District's obstinancy in refusing to acknowledge basic facts about this case, and the state of the law. These spurious arguments can serve no purpose other than as dilatory tactics to frustrate the effective administration of justice.

2.      Having previously alleged that Robert Levy is essentially a paralegal, the District now asserts that instead he was a party in the action, and therefore not entitled to recover the value of his time.

This is complete nonsense. Just as he is no paralegal – indeed he is an acknowledged authority and has published widely on constitutional law in general and the Second Amendment in particular – Robert Levy was never a plaintiff in this case  Even if this preposterous proposition by the District is given any reasonable reflection, Levy could never be imputed as a client-plaintiff because he did not reside in the District of Columbia during any stage of this case. As a non-resident of the District of Columbia, Levy did not directly benefit from the enjoinment of the District's unconstitutional laws. This latest claim by the District has no basis in law or fact.

Levy paid other attorneys to perform some tasks in the case, but that does not mean he became their client. Indeed, an elemental lesson in any law school professional responsibility course, tested on the MPRE, teaches that no amount of money paid by an individual to an attorney, for the benefit of a third party, converts the payer into the attorney's client. Nor do non-party "clients" sign briefs or perform any of the other legal functions that Levy has documented. There is nothing unusual about attorneys retaining other attorneys, or professionals, to provide input in a case.  That does not mean that the retaining attorneys are thereby participating as litigants. Some attorneys also hire medical professionals to evaluate their clients, but that does not convert the attorneys into patients.

3.       Strategic civil rights litigation is a time-honored practice. The formative stage of civil rights litigation is recognized as essential to providing individuals with access to the courts – access which they enjoy as a matter of right. *See, e.g. NAACP* v. *Button*, 371 U.S. 415 (1963).

There is absolutely no precedent – none – for the proposition that the formative stage of civil rights litigation is not compensable under Section 1988. The test is simple: was the time claimed by counsel spent conducting legal work to advance the litigation? Counsel's records demonstrate that the complaint research and drafting were conducted well before January 1, 2003. Defendants have not shown – and cannot plausibly argue – that pre-2003 tasks, as documented by counsel, were not related to the successful prosecution of the case. Defendant cannot pick a date out of thin air and declare that no work is compensable prior to that date.

Indeed, Dick Heller's handgun registration application is dated July 17, 2002. *See* Exh. A to Motion for Summary Judgment, granted by the D.C. Circuit and the Supreme Court. Heller (and other plaintiffs) met with counsel well before January 1, 2003, as established in the records. It is not for the Defendants unilaterally and arbitrarily to declare that work on this matter started on January 1, 2003, when counsel's incontrovertible records demonstrate that work necessary to the success of the litigation started many months earlier.

The argument is especially spurious in light of Defendants' memorable contrary statement to this Court:

> Even a cursory review of plaintiffs' [briefs] reveals that plaintiffs' counsel has been researching and crafting argument on the central issue in this case for months if not years . . . Litigating this case requires analysis that goes well beyond the legal research sufficient to argue most legal issues and encompasses 200 years of historical materials and debate.

Def. Mot. to Enlarge Time, 4/3/03, at 5.

When it suits Defendants, we have been working for years – until the bill arrives, at which point, the work took only a few weeks.

4.      The attack on Ms. Possessky's time is equally groundless.  Reports indicate that the District's retained Supreme Court counsel, Mr. Dellinger, mooted his case before *dozens* of attorneys. To suggest that Plaintiff's Supreme Court counsel may not even have the assistance of his one law partner – an accomplished attorney in her own right, as reflected in her declaration submitted in support of Plaintiff's fee petition – at a moot court for a Supreme Court argument – is preposterous.  As her billing entries indicate, Ms. Possessky's contributions were valuable and reasonably calculated to advance the litigation.

The Defendants' attempt to disqualify Ms. Possessky's time spent helping moot Mr. Gura for his Supreme Court argument—in the face of credible reports that the District's own counsel was himself mooted by *dozens* of lawyers – is in perfect keeping with the brazen double-standard the Defendants have advocated throughout the two years of fee-petition litigation in this case. (In that regard, as Plaintiffs would note once again, the Defendants have adamantly refused to disclose the hours worked on this case by their own counsel, while maintaining that Plaintiff's counsels' efforts—which amount to roughly the total annual output of a single junior associate—were unreasonable.)

5.      The billing records, receipts, and declaration of Robert Levy are perfectly acceptable and conclusive evidence of the costs incurred in this litigation. Travel expenses for out-of-town counsel are established compensable items under Section 1988. Levy undertook six such trips from his residence to Washington, D.C. – an average of less than one trip per year during the eight years that this litigation has been in process.  The trips were to participate in oral

arguments, amici conferences, moot courts, and a meeting with the Solicitor General – all indisputably legitimate legal expenses.

There having been no intervening change in the law on this point since it was previously briefed, it does not warrant Defendants' continued attack – or any further response. Defendants should be admonished to respect the Court's briefing schedule and stop repeatedly briefing old matters without cause.

6.      The suggestion that counsel's accomplishments were minimal because law review articles had already articulated an individual rights theory of the Second Amendment, presents yet another manifestation of the District's punitive nickel-and-diming. Numerous law review articles had also foreshadowed the District's position, yet the District found that "[l]itigating this case requires analysis that goes well beyond the legal research sufficient to argue most legal issues and encompasses 200 years of historical materials and debate," Def. Mot. to Enlarge Time, 4/3/03, at 5. Indeed, the District requested numerous extensions of time to analyze, digest, and brief what it correctly (and candidly) described as a "uniquely important and complex case" – notwithstanding an immense body of scholarly literature on the subject.

7.      It is difficult to know what possible application the District envisions for *Griffin* v. *Washington Convention Center*, 172 F. Supp.2d 193 (D.D.C. 2001), a case it could have cited at any time in the preceding two years of this fee litigation. *Griffin* concerned the interesting, but irrelevant, question of how to calculate an attorney's hourly rates where the fee agreement provided for a *contingency* fee as an alternative form of payment. Magistrate Judge Facciola was troubled by the fact that the requested hourly fee would have constituted an amount equivalent to a 68 percent contingency. He reduced the fees to an amount equal to 56% of the total award.

Here, of course, there is no contingency interest, because there are no money damages. And while counsel do not have established hourly rates, counsel's engagement in public interest litigation is not grounds for reducing counsel's pay below that which comparable private attorneys would have earned for similar work. Quite the opposite: the D.C. Circuit values Section 1983 work, and holds that civil rights work is to be compensable at prevailing market rates in the community. *Griffin*, 172 F. Supp.2d at 198 (citing *Covington* v. *District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995) and *Save Our Cumberland Mountains, Inc.* v. *Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988)).[1]

8.      Respectfully, after working on this case for over eight years, and considering the enormity of what counsel accomplished, they deserve to be promptly and adequately compensated. The District may well disagree with the substantive outcome of the case, but that does not justify the Defendants' scorched-earth approach to the fee litigation. The notion that a reasonable market rate for this lawsuit is $656,435 – for three primary lawyers over nearly six and a half years from filing date to Supreme Court decision – with allowable expenses of just $816.83 (barely more than the filing fees) – defies credulity. But it eloquently illustrates why litigating against the District can be so expensive—and not just for its opponents.

---

[1]For certain flat-fee work, Gura & Possessky have charged a for-profit client as much as 2.5 times the amount charged to non-profit, public interest clients for comparable work.

Plaintiff's motion for fees should be granted.

Dated: November 19, 2010                    Respectfully submitted,

                                            Alan Gura (D.C. Bar No. 453449)
                                            Gura & Possessky, PLLC
                                            Robert A. Levy (D.C. Bar No. 447137)
                                            Clark M. Neily, III (D.C. Bar No. 475926)
                                            101 N. Columbus Street, Suite 405
                                            Alexandria, VA 22314
                                            Phone: 703.835.9085
                                            Fax:    703.997.7665

                                    By:     ___/s/Alan Gura_____
                                            Alan Gura

                                            Attorneys for Plaintiffs