UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
SHELLY PARKER, *et al.*                       )
                                              )
            Plaintiffs,                       )
                                              )
      v.                                      )      Civil Action No. 03-0213 (EGS)
                                              )
DISTRICT OF COLUMBIA, *et al.*,               )
                                              )
            Defendants.                       )
_____)

**SUPPLEMENTAL BRIEF FOLLOWING HEARING OF DECEMBER 13, 2010**

The recent hearing confirmed that the Court should reject plaintiff's excessive fee request and award fees in the amount of $721,607.95.  As an initial matter, the hearing confirmed that the USAO *Laffey* Matrix is the appropriate lodestar rate and that there is no basis for an enhancement under the strict standards set forth in *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010).  Beginning with the latter, plaintiff never demonstrated the need for an enhancement to attract competent counsel or offered "specific proof linking the attorney's ability to a prevailing market rate." *Id*. at 1674, 1676.  Likewise, plaintiff failed to show extraordinary and unwarranted delay and never attempted to provide a "calculation of the cost to counsel" of the asserted delay, let alone why the asserted cost exceeds the compensation afforded by the payment at current rates. *Id*. at 1676; *see Gray v. Bostic*, 613 F.3d 1035, 1046 (11th Cir. 2010) (rejecting a similar request).

The hearing further confirmed that the lodestar rate for this case should be no greater than the $420/hour USAO *Laffey* rate.  *First*, plaintiff has not established that lead counsel's two-person law firm can command even USAO *Laffey* rates in the cases where the firm does not discount rates for public spirited reasons.  The D.C. Circuit explained in *Covington v. District of Columbia*, 57 F.3d 1101, 1108 (D.C. Cir. 1995), that (1) the "burden is on the fee applicant to

show that the attorney's billing practices are of the sort covered by the [*Save Our Cumberland Mountains*] test" and (2) that section 1988 "was not written to subsidize attorneys who charge below-market rates because they cannot command anything more."  Plaintiff's failure to show entitlement to USAO *Laffey* rates necessarily means he is not entitled to a higher rate.  Relatedly, plaintiff has never claimed that anything more than USAO *Laffey* rates would have been necessary to provide sufficient economic incentive for counsel to take the case.

*Second*, plaintiff has not offered any relevant market data to support the Kavanaugh Matrix.  Instead, plaintiff offers only the NLJ 250 survey.  The Supreme Court, however, strongly disapproved of the notion that section 1988 requires taxpayers to pay the rates charged by "the attorneys at some of the richest law firms in the country."  *See Perdue v. Kenny A*, 130 S. Ct. at 1677 n.8.  This footnote addressed the inappropriateness of such rates as an enhancement for a performance that the district court in *Kenny A* had found to be the best it had seen in 27 years on the bench.  *Id*. at 1670.  It follows that the Court would even more strongly disapprove of a methodology that relied on such rates to establish the basic lodestar rate.  Moreover, even with respect to large law firms, an affidavit submitted in *Miller v. Holzmann*, 575 F. Supp. 2d 2, 17 n.27 (D.D.C. 2008), established that the September 2007 rate of a 20-year partner at Wiley, Rein & Fielding (100 times the size of lead counsel's firm) was $495/hour, $55/hour above the USAO *Laffey* rate and $150 *below* the Kavanaugh Matrix for that experience level and year.

Moreover, plaintiff was represented by a two-person law firm, and small firms routinely charge considerably less than big firms.  *See* Opposition to Plaintiff Heller's Motion for Attorney Fees and Costs (Doc. No. [64]) at 16 and note 7 (citing cases).  Courts in the Southern District of New York, for example, routinely reduce awards by 25-33% based on the size of the firm.  *See id*. (and cited cases).  In response, plaintiff offered only an obscure point about efficiency that

did not address the difference in rates charged by small and large firms.  Plaintiff also asserted

that his legal team brought "wisdom" to the case, but the only proffered example was the

decision to bring the case based solely on the Second Amendment rather than adding other

claims – a routine (and inconsequential) strategic decision.  There also is no evidence that small

firms that offer wisdom routinely command the claimed rates, and plaintiff has never denied that

scholars, the Fifth Circuit, and the Office of Legal Counsel had developed the harder part of the

case – *i.e.*, the primary substantive arguments and historical research.

Further, plaintiff has no basis for comparing their proffered rate to the high partner rate

at any law firm, let alone the largest law firms in the country.  Prior to this lawsuit, in addition to

a one-year clerkship, lead counsel had only six years of litigation experience, no Supreme Court

experience, and no more than two years of experience in any particular organization.  *See*

Plaintiff's Motion for Attorney's Fees and Costs ("Pl. Mot."), Declaration of Alan Gura at ¶ 2.

Attorney Levy, moreover, had no litigation experience.  *See id.*, Declaration of Robert A. Levy.

For all but two of the law firms identified at p. 36 of plaintiff's motion, the Kavanaugh rate of

$589/hour well exceeds the low partner rate, a more relevant level of seniority.  (The *Laffey* rate

of $420/hour would be 13th of the 28 firms on the list of low partner rates of the District's largest

and most prestigious firms.)  Finally, as discussed at the hearing, plaintiff cannot establish his

attorneys' market value by reference to his opposing Supreme Court counsel.  Counsel's skills,

experience, and firm size remained the same regardless of the identity of District's counsel.

The hearing also confirmed that plaintiff's hours should be significantly reduced.  *First*,

plaintiff was unable to justify billing District taxpayers nearly 100 hours for work on a cross-

petition that related exclusively to clients who did not prevail.  *Second*, plaintiff's work against

legislation that would have mooted the case by repealing the challenged statutes was not, by

definition, reasonably necessary (and instead worked counter) to the litigation goal of setting

aside the statutes. *Third*, plaintiffs' reference to the importance of the "formative stage" of civil-

rights litigation wrongly conflates the constitutional right to encourage prospective litigants to

seek counsel with the right to *bill* those clients for work done before they became clients.  At the

hearing, the District also pointed to various other indicia of a lack of billing judgment including

(1) the failure to document it; (2) the billing of travel time at full rates; and (3) billing for many

hours of travel time that were not reasonably necessary to obtaining relief.  Plaintiff also has

never attempted to justify billing taxpayers, for example, for (1) work spent preparing a response

to the District's *en banc* petition when Federal Rule of Appellate Procedure 35(e) specifically

prohibits the filing of a response unless, unlike in this case, the Court specifically orders it or (2)

an unsuccessful motion to lift partially the stay of a mandate to which plaintiff had consented.

The hearing also confirmed that Mr. Levy and Ms. Possessky's hours should be

disallowed.  In addition to plaintiff's prior representations to the Court (*see* Doc. No. [8]), Mr.

Levy's lack of litigation experience, and his failure to keep contemporaneous billing records,

plaintiff's characterization in rebuttal of Mr. Levy as more a subject-matter expert than a litigator

demonstrated the hours' non-compensability given that expert fees are not compensable under 42

U.S.C. § 1988.  *See West Virginia Univ. Hospitals*, *Inc. v. Casey*, 499 U.S. 83 (1991).  Similarly,

given the asserted number of moots held (six), the other participants' qualifications, and the

number of amici, Ms. Possessky's participation in the moot court was not reasonably necessary.

The hearing further confirmed that the requested reductions are justified because of (1)

plaintiff's lack of billing judgment in preparing the petition; (2) the failure of two lawyers to

keep contemporaneous records; (3) the vagueness of the records; and (4) the admonition of the

D.C. Circuit that "special caution" is required when the government is a defendant.  *See Eureka*

*Inv. Corp.*, *N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 942 (D.C. Cir. 1984).  In light of the

foregoing, there is no basis for concluding with a "high degree of certainty," for example, that

lead counsel's more than 300 hours of entries labeled as "draft/research" for the Supreme Court

brief were reasonably necessary, particularly in light of plaintiff's previous briefing of the issue

in this Court and the D.C. Circuit.  *See Role Models America*, *Inc. v. Brownlee*, 353 F.3d 962,

970 (D.C. Cir. 2004).  Similarly problematic, in the only instance where such entries are more

specific, they reveal that lead counsel devoted an excessive 25.5 hours just to page 1 of his

opening D.C. Circuit brief.  *See* Gura (1/26/06-1/30/06).  Mr. Levy's use of terse and vague

descriptions in reconstructed records similarly provide no confidence, nor can it provide comfort

that attorney Neilly reconstructed his records with e-mail given that e-mail does not reveal, *inter

alia*, the length of time spent on a given activity.  Under such circumstances, the reductions

sought by the District are more than reasonable when compared with, for example, the

significantly higher reduction in *Role Models* and the comparable reductions in *Miller v.

Holzmann*.

DATE:  December 17, 2010      Respectfully submitted,

PETER J. NICKLES
Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


    /s/ Samuel C. Kaplan
SAMUEL C. KAPLAN, D.C. Bar No. 463350
Asst. Deputy Attorney General, Civil Litigation Division

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General, Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
andy.saindon@dc.gov