IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 03-CV-0213-EGS |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF
CONCERNING NOTICE OF APRIL 6, 2011**

Defendants propose a rule according to which big-firm lawyers are entitled to higher hourly rates in Section 1988 cases than lawyers who work in other settings, regardless of the actual quality of work performed by prevailing counsel and regardless of prevailing counsel's skill, experience, and reputation. What Defendants propose is, in effect, a legal caste system in which work performed by lawyers at large law firms is not just presumptively, but *inevitably* more valuable than work performed by other lawyers. That is not the law. As demonstrated below, Defendants' arguments misstate precedent and undermine the legislative purpose behind Section 1988. Contrary to the Defendants' assertion, the rates charged by the very lawyers who opposed Plaintiff's counsel are certainly relevant in determining how the local market values work of the kind they performed in this case.

**1. Defendants misstate precedent**.

Defendants begin their supplemental brief by arguing that *Kenny A. v. Perdue* precludes Mr. Heller's counsel from using "large-firm hourly rates to establish their hourly rates." But *Perdue* contains no such holding, nor does the footnote cited by the Defendants support their assertion. Instead, that footnote criticizes the dissent for endorsing a fee award under which prevailing counsel "would earn as much as the attorneys at some of the richest law firms in the

country." 130 S. Ct. 1662, 1677 n.8 (2010). By contrast, the rates requested by Plaintiff's counsel in this case are fully consistent with rates charged for similar work by lawyers with similar experience at established, well-regarded law firms in Washington, D.C.

Defendants' reliance on *Blackman v. District of Columbia*, 677 F. Supp. 2d 169 (D.D.C. 2010), for the same proposition—that big-firm rates are irrelevant to this case—is similarly unpersuasive. First, *Blackman* was an IDEA case, for which courts in this district generally award lower rates than cases involving a "heightened" level of complexity, like this one. *See* Pls.' Post-Hearing Brief Regarding Attorney Fees and Costs [Document 78] at 1-2 (citing and discussing cases). Second, Judge Friedman noted in *Blackman* that "plaintiffs have not shown that such expensive representation [i.e., by large, established law firms] would be required for this case." *Id*. at 176. By contrast, the District's decision to augment the resources of its Attorney General's office with teams from not just one, but *three* of the nation's most prestigious law firms indicates that both sides recognized counsel of the highest caliber would be "required" for this case. Finally, though not entirely clear from the opinion, it appears Judge Friedman may have reduced the hourly rates of two attorneys to reflect their firm's "commitment to *pro bono publico*." *Id*. at 175. If so, that reduction appears inconsistent with the rule that public-interest lawyers and lawyers who "practice privately and for-profit at reduced rates reflecting noneconomic goals" are entitled to prevailing market rates for their work in fee-shifting cases. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

2. **The relevant inquiry in this circuit is the "skill, experience, and reputation" of prevailing counsel—not the size of their firm.**

Contrary to the Defendants' tacit assertion, the quality (and, by extension, the value) of a lawyer's work bears no demonstrated, and certainly no necessary, relationship to the size of his or her law firm. Note, for example, the D.C. Circuit's requirement that lawyers seeking fee

awards must provide evidence of their "skill, experience, and reputation"—not the size of their firm. *Id*. at 1103.  Mr. Heller's counsel have provided the Court with that evidence and will not belabor it here other than to emphasize that their "skill, experience, and reputation" would enable any of them to return to a large-firm practice if they wished, but none of them do.

Large law firms tend to be very good at certain things, such as organizing massive amounts of discovery, staffing factually complex cases, and asserting a dizzying array of claims, defenses, and procedural arguments on their clients' behalf.  But the legal market values other qualities as well, including many for which large law firms enjoy no absolute or even comparative advantage.  Those qualities include vision, tenacity, acumen, and entrepreneurial spirit—qualities that Plaintiff's counsel believe they displayed to an exceptional degree in this case and that were integral to its outcome.

### 3. Fee awards should promote, not frustrate, the purposes of Section 1988.

As noted above, Defendants propose a bright-line rule according to which large-firm lawyers are entitled to higher hourly rates than lawyers who practice in other settings, including smaller firms that specialize in civil rights work (like Mr. Gura), public-interest law firms (like Mr. Neily), and academia/public policy (like Mr. Levy).  But that proposed rule contains an implicit judgment about the relative value of the legal work performed by large-firm lawyers for the corporations and wealthy individuals they typically represent, versus the value of legal work performed by lawyers who specialize in civil-rights enforcement.  In essence, Defendants ask this Court to endorse the proposition that defending, say, Exxon's Valdez oil spill has greater social utility than civil rights work *as a matter of law*.  That is certainly not the policy judgment reflected in Section 1988, which was designed to encourage enforcement of the nation's civil rights laws by lawyers acting as "private attorneys general."  Contrary to the Defendants' apparent understanding, Section 1988 stands as a declaration of national policy that the

representation of individuals seeking to vindicate their rights has value equal to that of representing O'Melveny's wealthy corporate clients.

As amply demonstrated by this case, fulfillment of Section 1988's objective sometimes requires work of the very highest professional caliber, often by lawyers who have the experience, skill, and reputation to work in any of the nation's most prestigious law firms, but have chosen a different route.  And when work of the highest caliber is performed in a given civil-rights case, Section 1988 and the case law interpreting it make clear that the work should be compensated accordingly.

Dated:  April 27, 2011

        Respectfully submitted,
        Alan Gura (D.C. Bar No. 453449)
        Gura & Possessky, PLLC
        Robert A. Levy (D.C. Bar No. 447137)
        Clark M. Neily III (D.C. Bar No. 475926)
        101 N. Columbus Street, Suite 405
        Alexandria, VA 22314
        Phone: 703.835.9085
        Fax:    703.997.7665

By: /s/ Clark M. Neily III
     Clark M. Neily III

Attorneys for Plaintiffs